**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:10cv278**

| | |
|---|---|
| **MICHAEL A. BROOKSHIRE,**       ) | |
|                             ) | |
|    **Plaintiff,**              ) | |
|                             ) | |
| **v.**                            ) | **ORDER** |
|                             ) | |
| **BUNCOMBE COUNTY, NORTH**   ) | |
| **CAROLINA, et al.,**           ) | |
|                             ) | |
|    **Defendants.**           ) | |
| _____ ) | |

Pending before the Court is Defendants' Motion for Summary Judgment [#
25]. Plaintiff brought this action asserting federal claims pursuant to Section 1983
and the Family Medical Leave Act ("FMLA"), as well as several state law claims.
Defendants move for summary judgment on all of Plaintiff's claims. The Court
**GRANTS in part** and **DENIES in part** Defendants' motion [# 25].

## I.    Background[1]

Plaintiff, who is a resident of North Carolina, began working as an employee
for Buncombe County in 1989. (Pl.'s Dep. 14:2-11; 22:5-11, Sept. 8, 2011.)

---

[1] The Court has viewed the facts and drawn all reasonable inferences in the light most
favorable to Plaintiff, as required when reviewing Defendants' Motion for Summary Judgment.
See United States v. Diebold, Inc., 369 U.S. 645, 655, 82 S. Ct. 993, 994 (1962). The Court,
however, has only considered the facts cited by the parties in their briefs that contain a citation to
the record. See Fed. R. Civ. P. 56(c)(1), (3). The Court has disregarded any statement of fact
contained in the parties' briefs that is not supported by a citation to the record.

During the relevant time period, Plaintiff worked as an Erosion Control Officer. (Pl.'s Dep. 25:3-7.)   Defendant Creighton is the Planning Director for Buncombe County and Plaintiff's immediate supervisor.  (Pl.'s Dep. 28:24-25; Creighton Dep. 10:24-25; 14:16-17, Oct. 4, 2011; Defs.' Ex. A at p. 1.)   As an Erosion Control Officer, Plaintiff was responsible for enforcing the Sedimentation Pollution Control Act of 1973, as well as Buncombe County's Erosion Control Ordinance. (Pl.'s Dep. 25:8-24; Defs.' Ex. A at p. 1.)

Plaintiff was a salaried employee and worked 8:00 a.m. to 5:00 p.m five days a week.  (Pl.'s Dep. 28:17-21; 36:10-19.)   Plaintiff, however, only worked on average three hours a day in the office.  (Pl.'s Dep. 36:24-37:5.)  The rest of the time Plaintiff was out of the office visiting and inspecting sites in Buncombe County, taking classes, or educating the public.  (Pl.'s Dep. 40:8-25; Creighton Dep. 14:10-15.)   In order to record the time he worked, Plaintiff filled out a time sheet that he submitted via a computerized system.  (Pl.'s Dep. 43: 16-25; Mathis Aff. ¶¶ 7-8.)   Plaintiff was supposed to record his hours worked and any vacation, sick leave, personal time off, annual leave, or other time off from work he took through this system.  (Mathis Aff. ¶ 7.)

Buncombe County also provided Plaintiff with a truck to drive.  (Pl.'s Dep. 149:3-150:19; Creighton Dep. 38:11-20.)  Buncombe County, however, owned the

truck, and it was registered to Buncombe County. (Pl.'s Dep. 149:14-17; 150:13-14; Creighton Dep. 38:11-12.) Pursuant to the County of Buncombe Vehicle Policy, the truck was only to be used for official county business. (Defs.' Ex. B. at p. 2.) Plaintiff signed a Memorandum of Understanding stating that he has no expectation of privacy to the items stored in his vehicle, and that Buncombe County has the right to search the vehicle without first notifying Plaintiff. (Defs.' Ex. M.)

Although Plaintiff was a good employee during the majority of his tenure with Buncombe County, during the last two years of his employment, Defendant Creighton began having concerns that Plaintiff was falsifying his time sheets and not working during the work day. (Creighton Dep. 21:1-10; 22:19-25:25.) For example, one of the County Managers informed Defendant Creighton that an employee with the National Forest Service reported seeing Plaintiff's truck in a park operated by the United States Forest Service during the work day. (Creighton Dep. 22:22-23:11.) Defendant Creighton confronted Plaintiff about this report and told him that he needed to stop going to such parks during the work day. (Creighton Dep. 23:1-9.) In addition, contractors and other Buncombe County employees complained that they could not reach Plaintiff during the work day. (Creighton Dep. 23:17-25:22.) Defendant Creighton counseled Plaintiff that he

needed to spend more time in the office. (Creighton Dep. 26:23-25.)

As a result of Defendant Creighton's suspicion that Plaintiff was not at work and was not doing his work related duties during the day, Defendant Creighton had a GPS device installed on the county truck Plaintiff drove. (Creighton Dep. 36:23-37:14.) This device tracked and recorded the location of the truck. (Creighton Dep. 39:20-21.) Defendant Creighton tracked the location of the truck for approximately three weeks before removing the device. (Creighton Dep. 57:9-27.) Plaintiff was unaware of the GPS device. (Pl.'s Dep. 148:25-149:2.)

After removing the device, County employees downloaded the GPS data and created a chart that compared the location of the vehicle as recorded by the GPS device with Plaintiff's time sheets and computer log on times. (Creighton Dep. 59:13-15.) The GPS data indicated that Plaintiff was traveling to various parks, among other places, during the day and was not working a full day. (Creighton Dep. 40:12-57:8.) Based on a review of this chart and the GPS data, Defendant Creighton concluded that Plaintiff was falsifying his time sheet. (Creighton Dep. 20:3-16; 30:23-31:23.) Defendant Creighton then spoke with Defendant Thornberry, the Director of Human Resources for Buncombe County, and informed him that he was going to recommend terminating Plaintiff for falsifying his time sheets and improper use of a County vehicle. (Thornberry Dep. 9:18-24;

14:2-16:20, Oct. 4, 2011.)

On September 1, 2009, Defendant Creighton and Plaintiff had a meeting where Defendant Creighton shared the GPS data with Plaintiff. (Creighton Dep. 60:11-61:25; Pl.'s Dep. 148:7-19; 166:17-167-3.) Plaintiff admitted to visiting Blantyre Park during the work day but stated that he was there working. (Creighton Dep. 63:6-17; Pl.'s Dep. 148:12-19.) Defendant Creighton then informed Plaintiff that he would be recommending that Buncombe County terminate his employment. (Creighton Dep. 62:7-16.) Later that same day, Defendant Creighton informed Defendant Thornberry that he had suspended Plaintiff with pay and was recommending that the County Manager terminate his employment. (Thornberry Dep. 17:19-17.)

Several days later, Defendant Thornberry spoke to Plaintiff over the phone about his options. (Thornberry Dep. 19:16-17.) Defendant Thornberry informed Plaintiff that Defendant Creighton recommended that Plaintiff be fired for falsifying time sheets and improper use of a county vehicle. (Thornberry Dep. 19:17-21; Pl.'s Dep. 30:1-6.) In addition, he told Plaintiff that he was on paid suspension pending a pre-dismissal hearing where the County Manager would determine whether to terminate Plaintiff. (Thornberry Dep. 19:17-20:4.) During this conversation, Defendant Thornberry informed Plaintiff that he could either go

forward with the hearing or he could resign and retire.  (Thornberry Dep. 20:1-4.)

If Plaintiff was terminated he would not receive some of this post-retirement health

benefits because he was short of the twenty year service mark. (Thornberry Dep.

20:5-9.)  However, if Plaintiff opted to resign and retire, he could use his annual

leave to reach the twenty year mark and, thus, retain his health benefits.

(Thornberry Dep. 20:10-15.)  Plaintiff contends that Defendants Thornberry and

Creighton told him that he would lose all his retirement benefits if he was

terminated.  (See e.g., Pl.'s Dep. 93:8-10, 192:15-24, 193: 6-10, 197:15-25, 219:6-

16.)  Plaintiff stated that he would get back with Defendant Thornberry later.

(Thornberry Dep. 20:15.)

Although Defendant Thornberry called Plaintiff several times after the

September 3rd conversation and left him messages, Plaintiff did not return any of

the calls.  (Thornberry Dep. 25:4-7.)  Defendant Thornberry informed Defendant

Creighton that Plaintiff was not returning his calls, and Defendant Creighton then

had an employee go to Plaintiff's house and personally ask him to call Defendant

Thornberry.  (Thornberry Dep. 25:8-22.)   On September 9, 2009, Plaintiff called

Defendant Thornberry and said he was still weighing his options.  (Thornberry

Dep. 25:12-13; Pl.'s Dep. 192:16-25.)  Plaintiff requested a termination letter

setting forth the reasons for his dismissal and the appeal process. (Pl.'s Dep. 180:4-

8, 192:15-193:24.)  Plaintiff did not receive such a letter.  (Pl.'s Dep. 180:11-12.)

Subsequently, Plaintiff submitted his letter of resignation, dated  September 10,

2009.  (Thornberry Dep. 26:14-18; Defs.' Ex. G.)  Plaintiff resigned effective

September 21, 2009.  (Defs.' Ex. G.)  In his letter, Plaintiff claims that he wrote the

letter under extreme duress because he was informed by the Human Resources

Department that if he did not resign he would be terminated on a date short of his

retirement date and he would not be able to receive retirement benefits.  (Defs.' Ex.

G.)  This action ensued.

## II.    Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a party is

entitled to summary judgment if the movant "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  The existence of some alleged factual dispute between

the parties will not defeat a motion for summary.  Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510 (1986); Bouchat v. Baltimore Ravens

Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003).  Rather, there must be a

genuine issue of material fact.  Id.  "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of

summary judgment.  Factual disputes that are irrelevant or unnecessary will not be

counted." <u>Anderson</u>, 477 U.S. at 248, 106 S. Ct. 2510. Finally, in deciding a motion for summary judgment, the Court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). The Court, however, may consider the other materials in the record. <u>Id.</u>

### III.    Analysis

### A.      The Fourth Amendment

Plaintiff asserts a cause of action pursuant to 42 U.S.C. § 1983 against Defendants based on their alleged violation of his Fourth Amendment right to be free from unreasonable searches. Specifically, Plaintiff contends that Defendants violated the Fourth Amendment's protection against unreasonable searches by placing the GPS device on his vehicle and tracking the location of the vehicle. Defendants contend that they are entitled to summary judgment on this claim.

The Fourth Amendment to the United States Constitution protects individuals against "unreasonable searches and seizures" of "their persons, houses, papers, and effects. . . ." U.S. Const. amend. IV. The protections of the Fourth Amendment are not limited to criminal investigations and also apply "when the Government acts in its capacity as an employer." <u>City of Ontario v. Quon</u>, 130 S. Ct. 2619, 2627 (2010). The protections of the Fourth Amendment, however, only apply where the individual has a reasonable expectation of privacy in the invaded

place.  O'Connor v. Ortega, 480 U.S. 709, 715, 107 S. Ct. 1492, 1496 (1987);

United States v. Bullard, 645 F.3d 237, 242 (4th Cir. 2011).  "For an expectation of

privacy to be legitimate, it must be objectively reasonable; in other words, it must

be an expectation 'that society is prepared to recognize as reasonable.'" Bullard,

645 F.3d at 242 (quoting Bond v. U.S., 529 U.S. 334, 338, 120 S. Ct. 1462 (2000)).


In United States v. Knotts, 460 U.S. 276, 203 S. Ct. 1081 (1983), the United

States Supreme Court held that the use of a beeper device to track a suspect did not

amount to a search or seizure within the meaning of the Fourth Amendment.  The

Supreme Court explained that "[a] person traveling in an automobile on public

thoroughfares has no reasonable expectation of privacy in his movements from one

place to another."  Knotts, 460 U.S. at 281, 103 S. Ct. 1081.  Subsequently, nearly

every federal court to address the issue has held that the installation and use of a

GPS device to track the location of a vehicle on public streets is not a search within

the meaning of the Fourth Amendment.  See United States v. Cuevas-Perez, 640

F.3d 272 (7th Cir. 2011); United States v. Hernandez, 647 F.3d 216 (5th Cir.

2011); United States v. Pineda-Moreno, 591 F.3d 1212 (9th Cir. 2010); United

States v. Garcia, 474 F.3d 994 (7th Cir. 2007); United States v. Narrl 789 F. Supp.

2d 645 (D.S.C. 2011); United States v. Sparks, 750 F. Supp. 2d 384 (D. Mass.

2010); but see United States v. Maynard, 615 F.3d 544 (D.D.C. 2010).

Like the majority of courts to consider this issue, the Court finds that Knotts is controlling and forecloses Plaintiff's Section 1983 claim based on Defendants' alleged violation of his Fourth Amendment right to be free from unreasonable searches. The installation of a GPS device in a vehicle owned by the County and the subsequent tracking of the vehicle's location did not violate Plaintiff's Fourth Amendment right to be free from unreasonable searches. See Knotts, 460 U.S. at 281, 103 S. Ct. 1081. The Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's Section 1983 claim based on the Fourth Amendment.

## B. Due Process

Plaintiff asserts a cause of action pursuant to Section 1983 against Defendants based on their alleged deprivation of his due process rights. Plaintiff contends that by forcing him to resign, Defendants deprived him of his property interest in his continued public employment without due process of law. Defendants move for summary judgment on this claim on the ground that because his resignation was voluntary, no deprivation of any property interest occurred.

In order to assert a valid claim for either substantive or procedural due process, Plaitniff must first show that he has a constitutionally protected liberty or property interest that was deprived through state action. Stone v. Univ. of MD

Med. Sys. Corp. 855 F.2d 167, 172 (4th Cir. 1988); Royster v. Bd. of Trs. of Anderson Cnty. Sch. Dist. No. Five, 774 F.2d 618, 620 (4th Cir. 1985). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." Stone, 855 F.2d at 172.

As the Fourth Circuit has explained, a public employee like Plaintiff has a property interest in his continued employment where his employment can only be terminated for cause. Id.; Royster, 774 F.2d at 620-21. However, where an employee voluntarily resigns and, thus, relinquishes his property right to continued employment, the employee cannot establish that he was deprived of his property right within the meaning of the due process clause. Stone, 855 F.2d at 173; Young v. Annarino, 123 F. Supp. 2d 915, 925 (W.D.N.C. 2000) (Thornburg, J.). This is true even where a resignation is prompted by events set in motion by his employer, provided that the employer resigned of his own free will. Stone, 855 F.2d at 173.

> If, on the other hand, [the employee's] "resignation" was so involuntary that it amounted to a constructive discharge, it must be considered a deprivation by state action triggering the protections of the due process clause. A public employer obviously cannot avoid its constitutional obligation to provide due process by the simple expedient of forcing involuntary "resignations." The proper focus of the constitutional inquiry here is therefore on the voluntariness of [the employee's] resignation. The answer to that factual inquiry is dispositive of the constitutional

"deprivation" issue, and potentially of the constitutional claim.

Id.

In determining where a resignation was voluntary, the Court looks to the totality of the circumstances to determine whether the employee was in fact denied the opportunity to make a free choice whether to resign. Id. at 174; Young, 123 F. Supp. 2d at 925-26. Courts have recognized two circumstances where a resignation is involuntary and, therefore, a deprivation under the due process clause. Stone, 855 F.2d at 174. First, a resignation is involuntary where it is obtained by misrepresentation or deception by the employer. Id. Second, a resignation is not voluntary if it is "forced by the employer's duress or coercion." Id. As the Fourth Circuit explained in Stone, these two circumstances "involve situations in which the employer's conduct has prevented the employee from making a free and informed choice, hence, in our terms, has effectively deprived the employee of his protected property interest." Id.

A resignation is involuntary under the misrepresentation theory where the resignation is induced by the employee's reasonable reliance on a misrepresentation by an employer of a material fact that concerns the resignation. Id. "A misrepresentation is material if it concerns either the consequences of the resignation or the alternate of resignation." Id. (internal citations omitted). In

addition, the reliance must be reasonable under the circumstances.  Id.

Here, Plaintiff contends that Defendants told him that if he did not retire he would lose both his retirement and health benefits.  It is undisputed that Plaintiff would not have lost his retirement benefit if he was terminated because he already had the combination of years of service and age to receive retirement benefits. (Thornberry Dep. 21:12-20.)  As Plaintiff acknowledges in his Response to Defendants' Motion for Summary Judgment, Plaintiff would have lost his health benefits if he was terminated.  (Pl.'s Resp. to Defs.' Mot. Sum. J. at 12.) Accordingly, only the statement regarding the loss of retirement benefits could constitute a misrepresentation.

The Court finds that Defendants are not entitled to summary judgment on Plaintiff's Section 1983 due process claim because a question of material fact exists as to whether Plaintiff's resignation was voluntary because of a material misrepresentation.  First, a question of material fact exists as to whether Defendants told Plaintiff that he would lose his retirement benefits if he was terminated and did not resign.  (Pl.'s Dep. 93:8-10, 192:15-24, 193: 6-10, 197:15-25, 219:6-16.)  Such a misrepresentation is material because it concerns the consequences if Plaintiff was terminated rather than resigning. See Stone, 855 F.2d at 174.  Finally, Plaintiff has raised a genuine issue of material fact as to whether

his reliance on these misrepresentations was reasonable. Defendant Thornberry is the Human Resources Director for Buncombe County and has served in this role since 1982. (Thornberry Dep. 9:18-24.) A question of material fact exists as to whether it was reasonable for Plaintiff to rely on the statements of the Human Resources Director or whether he should have independently researched the issue of whether his termination would result in the loss of his retirement benefits. See Leardini v. Charlotte-Mecklenburg Bd. of Educ., No. 3:09cv264, 2011 WL 1499747 (W.D.N.C. Apr. 19, 2011) (Mullen, J.) (denying motion for summary judgment and finding a question of material fact as to whether defendant made material misrepresentation to plaintiff). Whether either Defendant made the statements regarding the loss of Plaintiff's retirement benefits and whether Plaintiff reasonably relied on these statements are questions for the jury to decide.

Finally, Defendants Creighton and Thornberry are not entitled to qualified immunity on this claim. As discussed above, a genuine question of material fact exists as to the alleged misrepresentations made by Defendants Creighton and Thornberry. If either individual did in fact make a material misrepresentation to Plaintiff, and Plaintiff resigned his employment in reliance on the misrepresentation, then Defendant violated clearly established federal law. See Stone, 855 F.2d at 173; Leardini, 2011 WL 1499747 at *4-5 (denying qualifying

immunity).  Accordingly, the Court **DENIES** the Motion for Summary Judgment as to the Section 1983 due process claim.

### C.    The FMLA

Pursuant to the FMLA, an eligible employee is entitled to twelve weeks of leave during any twelve month period where the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D); see also Miller v. AT&T Corp., 250 F.3d 820, 825 (4th Cir. 2001).  The term serious health condition "means an illness, injury, impairment, or physical or mental condition that involves inpatient care as defined in § 825.114 or continued treatment by a health care provider as defined in § 825.115." 29 C.F.R. § 825.113.[2]  "Inpatient care means an overnight stay in a hospital, hospice, or residential medical care facility . . . or any subsequent treatment in connection with such inpatient care." 29 C.F.R. § 825.114.

If the necessity for leave because of this serious heath condition is foreseeable based on planned medical treatment, the employee must make a reasonable effort to schedule the treatment so as not to unduly interfere with the employer's operations and must provide the employer with at least thirty days notice of the employee's intention to take leave. 29 U.S.C. § 2612(e)(2); 29 C.F.R.

---

[2]  Plaintiff contends that he falls under the inpatient care prong of the definition.  (Pl.'s Resp. to Defs.' Mot. Summ. J. at 5.)

§ 825.302(a).  Where thirty days notice is not practicable, the employee must provide notice as soon as practicable.  29 C.F.R. § 825.302(a); 29 C.F.R. § 303(a). "As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case."  29 C.F.R. § 825.302(b).  Moreover, the notice  shall "provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA–qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c).

The FMLA provides an aggrieved employee with both prescriptive and proscriptive rights and, thus, two potential claims.  Yashenko v. Harrah's N.C. Casino Co., LLC, 446 F.3d 541, 546 (4th Cir. 2006).  First, Section 2615(a)(1) provides a claim where an employer interferes with an employee's exercise of his FMLA rights.  Id.; 29 U.S.C. § 2615(a)(1); see also Weth v. O'Leary, 796 F. Supp. 2d 766, 777-78 (E.D. Va. 2011).  An example of such a claim is where an employer improperly denies a request for FMLA leave.  See Miller, 250 F.3d at 826.  Second, Section 2615(a)(2) provides a claim where an employee discriminates or retaliates against an employee for exercising his substantive rights under the FMLA.  Yashenko, 446 F.3d at 546. An example of a claim under Section 2615(a)(2) is where an employer terminates an employee in retaliation for

taking FMLA leave.  See id. at 551.[3]

       1.    plaintiff's interference claim

In order to assert an interference claim, Plaintiff must demonstrate that: (1)

he is an eligible employee under the FMLA; (2) that the County is covered by the

FMLA; (3) that he was entitled to leave under the FMLA; (4) that he gave the

County adequate notice of his intention to take FMLA leave; and (5) that the

County denied him FMLA benefits to which he was entitled.  Rodriguez v.

Smithfield Packing Co., Inc., 545 F. Supp. 2d 508, 516 (D. Md. 2008)

(citing Edgar v. JAC Prods., Inc., 443 F.3d 501, 507 (6th Cir. 2006); Atchinson v.

Sears, 666 F. Supp. 2d 477, 488 (E.D. Pa. 2009); Laing v. Fed. Express Corp., No.

3:10cv242, 2011 WL 6072028, at *5 (W.D.N.C. Oct. 13, 2011) (Mullen, J.);

Mackie v. Jewish Found. for Group Homes, No. DKC 10-0952, 2011 WL 1770043

---

[3] It is unclear from the record whether Plaintiff is proceeding only under Section 2615(a)(1) or under both provision of Section 2615.  Both parties combine their arguments regarding the two claims together in their briefs and fail to clearly articulate their positions as to each claim. For example, Plaintiff first argues that Defendants failed to comply with their obligations under the FMLA and classify his leave as FMLA leave. (Pl.'s Resp. to Defs.' Mot. Summ. J. at 7-8.)  Put simply, Defendants failed to allow him to take FMLA leave and forced him to take personal or sick leave instead. (Id.; Pl.'s Dep. 46:12-47:9) This is an interference claim under Section 2615(a)(1).  Plaintiff, however, also contends that Defendants terminated him because he took FMLA leave. (Pl.'s Resp. to Defs.' Mot. Summ. J. at 9-11; Pl.'s Compl. ¶¶ 53-56.)  In fact, the Complaint alleges that Defendants designated Plaintiff's time off as FMLA leave time.  (Pl.'s Compl. ¶ 54.)  This is a retaliation claim under Section 2615(a)(2). These claims, however, contradict each other.  Either Plaintiff took FMLA leave or he did not.  Either Defendants interfered with his FMLA rights and denied his request for FMLA leave or Plaintiff took FMLA leave and Defendants discriminated against him for doing so.  Regardless of whether Plaintiff intended to proceed just under Section 2615(a)(2) or both sections, the Court will consider both claims.

(D. Md. May 9, 2011); Ijames v. Autumn Corp., No. 1:08cv777, 2009 WL

2171252, at *8 (M.D.N.C Jul. 20, 2009).  Because an interference claim is not

about discrimination but, rather, whether the employer provided the employee with

the entitlements guaranteed by the FMLA, the McDonnell Douglas burden shifting

analysis is not applicable to an interference claims.  See Attchison, 666 F. Supp. 2d

at 488.

Plaintiff contends that approximately three months prior to his resignation he

told Defendant Creighton and a secretary that he planned on starting to take

Tuesdays and Wednesdays off to help him with his stress levels and health.  (Pl.'s

Dep. 46:13-48:23.)  Plaintiff made this decision on his own without a doctor's

prescription.  (Pl.'s Dep. 50:5-12.)  Plaintiff, however, contends that he was called

into work on some of these days. (Pl.'s Dep. 52:22-53:12.)

As a threshold matter, Plaintiff has not demonstrated that there is a genuine

question of material fact as to whether he was entitled to FMLA leave.  Although

Plaintiff cites to a variety of medical records and lists various ailments he suffers

from in his deposition, he fails to demonstrate that he suffered a serious health

condition that incapacitates him from working.  See 29 U.S.C. § 2612(a)(1)(D);

Miller, 250 F.3d at 825.  In fact, Plaintiff acknowledges that the decision to only

work three days a week was his and was not based on the recommendation of a

medical professional. See 29 C.F.R. § 825.123 ("An employee is 'unable to perform the functions of the position' where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position."). Moreover, Plaintiff has not shown that he would be entitled to take FMLA leave on an intermittent or reduced schedule because he has not shown that it was medically necessary due to a serious health condition. See 29 C.F.R. § 825.203; 29 U.S.C. § 2612(b)(1).[4] Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's interference claim.

2.    plaintiff's retaliation claim

Claims for retaliation under the FMLA are analogous to claims brought under Title VII and, therefore, are analyzed under the McDonnell Douglas burden shifting framework. Yashenko, 446 F.3d at 550-51. In order to prevail on his retaliation claim, Plaintiff must first make a prima facie showing that he: (1) engaged in protected activity; (2) that the County took adverse action against him;

---

[4] To the extent that Plaintiff bases his interference claim on the denial of a request for FMLA leave other than the intermittent leave he sought, Plaintiff has not shown that there is a genuine question of material fact that he was entitled to take FMLA leave or that he provided the County with sufficient notice to make the County aware that he needed FMLA qualifying leave other than the intermittent leave he claims he discussed with Defendant Creighton. See 29 C.F.R. § 825.302. Moreover, Plaintiff has not shown that any notice was provided at least thirty days prior to the requested leave, or as soon as practicable where thirty days was not practicable. 29 U.S.C. § 2612(e)(2); 29 C.F.R. § 825.302(a).

and (3) that the adverse action was casually connected to his protected activity. Id. at 551. If Plaintiff satisfies his initial burden, then the burden shifts to Defendants to offer a non-discriminatory explanation for his termination. Id. The burden then shifts back to Plaintiff to establish that the County's non-discriminatory explanation is a pretext for unlawful retaliation under the FMLA. Id.

As a threshold matter, Plaintiff has not demonstrated that he took FMLA leave; thus, the only protected activity he even arguably could have engaged in was when he allegedly spoke to Defendant Creighton and requested intermittent FMLA leave. Plaintiff, however, has failed to demonstrate a casual connection between his request for FMLA leave and Defendant Creighton's recommendation that the County terminate Plaintiff's employment. In order to demonstrate a casual connection, Plaintiff must prove that he was terminated because he requested FMLA leave. Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998); Wright v. Southwest Airlines, 319 F. App'x 232, 233-34 (4th Cir. 2009). Here, Plaintiff has not come forward with any evidence suggesting the requisite casual connection between Defendant Creighton recommending Plaintiff's termination and his request for FMLA leave three months prior to his separation. (Pl.'s Dep. 48:4-23; Pl.'s Resp. Mot. Summ. J. at 9.)

Even assuming that Plaintiff did make a prima facie showing of retaliation, however, Plaintiff has not established that the County's non-discriminatory explanation - that Plaintiff was terminated for falsifying time sheets and violating the County's vehicle policy - is a pretext for unlawful retaliation under the FMLA. See Yashenko, 446 F.3d at 551. The evidence cited by Plaintiff does not create a genuine issue of material fact as to whether the County's legitimate non-discriminatory reason for recommending Plaintiff's termination was a pretext for unlawful discrimination under the FMLA. Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's FMLA retaliation claim.

### D.    The State Law Claims

#### 1.    the official capacity claims

 In addition to the federal claims, Plaintiffs asserts claims for fraud, negligent misrepresentation, and negligence against Defendants. "Under the common law, a municipality is not liable for the torts of its employees committed while performing a governmental function." Edwards v. Akion, 279 S.E.2d 894, 896 (N.C. Ct. App. 1981). A municipality, however, may waive its immunity by purchasing liability insurance. Id. "Immunity is waived only to the extent that the city is indemnified by the insurance contract." Id. This immunity also extends to

government officials sued in their official capacity.  See Houck & Sons, Inc. v. Transylvania Cnty., 852 F. Supp. 442, 457-58 (W.D.N.C. 1993) (Dupree, J.)  Here, Defendants have demonstrated that there is no question of material fact that the policy does not provide coverage for Plaintiff's tort claims.  See McCoy v. Coker, 620 S.E.2d 691, 693 (N.C. Ct. App. 2005) ("It is defendants' burden to show that no genuine issue of material fact exists that the policy does not cover [the alleged actions].") In fact, Plaintiff has not presented the Court with any evidence or citation to authority in response to Defendants' argument that they are entitled to governmental immunity on the tort claims.  Accordingly, Defendants' are entitled to summary judgment on the official capacity state law claims.  See Houck, 852 F. Supp. at 458-59; Beck v. City of Durham, 573 S.E.2d 183, 189-90 (N.C. Ct. App. 2002).  The Court **GRANTS** the Motion for Summary Judgment as to Plaintiff's official capacity state law claims.

      2.    the negligence claims against Defendants Creighton and Thornberry in their individual capacity

Defendants Creighton and Thornberry are entitled to public official immunity as to the negligence claims asserted against them in their individual capacity.  "A public official may only be held personally liable when his tortious conduct falls within one of the immunity exceptions: 1) the conduct is malicious; 2) the conduct is corrupt; or 3) the conduct is outside the scope of official

authority." <u>Mabrey v. Smith</u>, 548 S.E.2d 183, 186 (N.C. Ct. App. 2001); <u>Hunter v. Transylvania Cnty. Dept. of Soc. Servs.</u>, 701 S.E.2d 344, 346 (N.C. Ct. App. 2010). In response to Defendants' argument that they are entitled to public official immunity on the state tort claims asserted against them in their individual capacity, Plaintiff fails to cite to any evidence in the record or any legal authority. Accordingly, the Court finds that Defendants Creighton and Thornberry are entitled to public official immunity as to the negligence claims asserted against them in their individual capacity. The Court **GRANTS** the Motion for Summary Judgment as to the individual capacity negligence claims asserted against Defendants Creighton and Thornberry.

   3. <u>fraud</u>

  A public official is not immune from suit in their individual capacity where a Plaintiff alleges the commission of an intentional tort. <u>Beck</u>, 573 S.E.2d at 190. Fraud is an intentional tort. <u>See</u> <u>McCune v. Xerox Corp.</u>, 225 F.3d 654 (4th Cir. 2000) (unpublished) (applying Virginia state law); <u>Savage v. N.C. Dep't of Corr.</u>, No. 5:06cv171, 2007 WL 2904182, at * 6 (E.D.N.C. Sept. 29, 2007). Accordingly, the public immunity doctrine cannot shield Defendants from personal liability from the fraud claim asserted by Plaintiff. <u>See</u> <u>Beck</u>, 573 S.E.2d at 190.

  In order to prove a fraud claim under North Carolina law, Plaintiff must

establish that the Defendants: (1) made a false representation of material fact; (2) either knew the representation was false or made it with reckless disregard to its truth or falsity; (3) intended for Plaintiff to rely on the representation; and (4) that Plaintiff suffered an injury by reasonably relying on the false representation. Food Lion, Inc. v. Cap. Cities/ABC, Inc., 194 F.3d 505, 512 (4th Cir. 1999) (applying North Carolina law). As discussed at length in the Court's analysis of Plaintiff's Section 1983 due process claim, a question of material fact exists as to whether Defendants made a material misrepresentation regarding the loss of retirement benefits if Plaintiff was terminated and whether Plaintiff reasonably relied on the misrepresentation in deciding to resign. Moreover, whether Defendants made these alleged misrepresentations with the intend to deceive Plaintiff is a question for the jury. See Leardini, 2011 WL 1499747 at *5. Accordingly, the Court **DENIES** the Motion for Summary Judgment as to the fraud claim asserted against Defendants Creighton and Thornberry in their individual capacity.

## IV.    Conclusion

The Court **GRANTS in part** and **DENIES in part** Defendants' Motion for Summary Judgment [# 25]. The Court **GRANTS** the motion as to all claims except for the Section 1983 claim against Defendants based on their alleged deprivation of this due process rights and the fraud claim asserted against Defendant Thornberry

in his individual capacity.

Signed: January 18, 2012

Dennis L. Howell
United States Magistrate Judge